ANDERSON-DULIN-VARNELL CO. v. LESTER PIANO CO. et al.

Eastern Section.    May 22, 1926.

Petition for Certiorari denied by Supreme Court.    November 20, 1926.

1. **Contracts.**   **Provisions of contract providing for rent construed by the court.**

In an action on a contract where the lease provided that the lessee was to pay a certain per cent on the sales of its business and guaranteed annual sales of $35,000 and it was further provided that in considering the guaranteed sum, the account of sales of New Home Sewing Machines were to be considered, held in arriving at the rental to be paid for the building, that the amount received from the sales of sewing machines should first be deducted from the $35,000 annual sales and the percent calculated on the balance.

Appeal from Chancery Court of Knox County; Hon. Chas. Hayes Brown, Chancellor.

Modified and affirmed.

Ayers & Broughton, of Knoxville, for appellant.

Green, Webb & Bass, of Knoxville, for appellee.

SENTER, J.   On July 27, 1922, the complainant leased to the defendant for a period of two years, beginning August 1, 1922, and expiring August 1, 1924, certain space in the department store of complainant in the city of Knoxville for the sale of pianos. The written lease contract is as follows:

"1. THIS AGREEMENT made and executed this 27th day of July, 1922, by and between Anderson Dulin Varnell Co., a corporation under the laws of Tennessee, located and doing business in the city of Knoxville, in said State of Tennessee, hereinafter called the lessor, and the LESTER PIANO CO., a corporation under the laws of Pennsylvania, doing business in the city of Philadelphia, county of Philadelphia, State of Pennsylvania, hereinafter called the lessee.

"2. The lessor for the consideration hereinafter mentioned has demised and let, and does hereby demise and let, unto the said lessee, its successors and assigns, a space in the store of said lessor, to be used by the lessee as and for a salesroom for the sale of pianos on the mezzanine floor of the lessor's store, near the elevator, space to be approximately twelve feet by sixty feet, properly lighted and heated,

in which space the lessee agrees to conduct a first-class piano business, and to carry insofar as it may be practical a stock of the popular styles of pianos manufactured by lessee that may be called for by the general public. This space to be changed if said space occupied is not suitable for a successful piano business.

"3. This lease is for two years, beginning August 1, 1922, and ending August 1, 1924.

"4. The lessor agrees to pay the following costs, charges and expenses which shall be repaid to it by deducting the same from the monthly account of sales hereinafter provided for in addition to the commission on sales herein mentioned.

"(a) Advertising done, amounting to about five percent (5%) of the sales, for this Department at the same contract rate the lessor pays for its own store advertising, said advertising to have suitable space in the lessor's regular store ads, twice each and every week, including Sundays, if the lessee so desires, the advertising to be done in such mediums as are mutually agreed upon, said copy to be censored by the advertising department of lessor. Such advertising to be done only upon order and approval of lessee.

"(b) Salaries of employees who are supplies by lessee, who shall at all times be subject to the rules and regulations of the lessor.

"(c) Insurance, which shall be made payable to lessee; lessor covenanting to hold lessee harmless against any loss by fire on the lessor's premises.

"(d) Freights, etc.—All charges for freights or transportation and the cost of removal from railroad to warehouse, warehouse to store and from store or warehouse to customer above provided for.

"5. The lessor agrees that pianos may be sold on terms of an average of ten percent (10%) cash, and the remainder divided into thirty equal monthly payments, bearing interest from date at the rate of eight percent (8%) per annum, or lower terms, if satisfactory to lessor.

"6. The lessee covenants and agrees to pay the lessor for the use of space herein provided and all service rendered, including collections, accountings, and all overhead charges eighteen percent (18%) of the sales of said business (in figuring the amount of sales, any goods, instruments or other articles taken in exchange, are not to be included, until they are resold) guaranteeing annual sales of thirty-five thousand dollars ($35,000). It is understood that any sales made on account of the New Home Sewing Machines are to be considered and taken as a part of the guaranteed annual sales of thirty-five thousand dollars ($35,000).

"7. It is mutually covenanted and agreed by the lessee and lessor that all sales during the term of this agreement shall be made in the books of the lessor and that all cash received from sales shall each day be turned over to the regular cashiers of the lessor, and that the lessor shall have exclusive right to collect all moneys which shall be due, on account of said sales or business transactions. All accounts created in the piano department are to belong to lessee until paid for in cash by lessor. All sales are to be subject to the OK of lessor's credit Department.

"8. The lessor on or before the fifteenth day of each month agrees to pay in cash to the said lessee the total of all sales, leases and time payment contracts made during the preceding calendar month, less eighteen percent (18%). All charges made against the lessee for accounts such as salaries of employees, cost of advertising, freight or other expenses properly chargeable to the said Piano Department shall be deducted from the monthly remittance of the lessor to the lessee.

"9. It is also agreed between the lessor and lessee that any pianos that are reclaimed from purchasers by the said lessor, during the term of this lease on account of non-payment or any other reason, shall be repurchased by the lessee at the original price at which the said pianos were sold, less eighteen percent (18%). The payments on repossessed instruments shall be divided as follows: The lessor and lessee shall divide equally all payments on repossessed pianos until lessor has received eighteen percent (18%) of the sales and the balance goes to the lessee.

"10. In the event of this agreement being terminated by either party hereto, in accordance with the terms hereof, the lessee shall vacate the demised premises and the lessor shall permit the lessee to remove any and all of the goods either in said space so leased or in its warehouse.

"11. The lessor further agrees that from and after the termination of this agreement, in the event of any of the pianos sold or hired pursuant to this agreement being repossessed by it that it will retain said pianos so repossessed as its property and that the said lessee shall not be under any obligation to take, pay for or repossess said pianos in any event whatsoever.

"12. This agreement and all the covenants and obligations and liabilities therein created shall be binding upon the respective parties hereto, in their successors and assigns.

IN WITNESS WHEREOF the Anderson-Dulin-Varnell Co. and the Lester Piano Co. have hereunto caused their common or corporate seals to be affixed and signed by their respective officers, the day and year first above written.''

The controversy between the parties is with reference to the amount which the lessor was entitled to receive from the lessee as rent for the space occupied by the lessee. There are other questions made by the pleadings and on this appeal. We will first dispose of the construction of the contract with reference to the rental which the lessor was entitled to receive from the lessee. This involves a construction of Item 6 of the lease contract. By this item it is provided that the lessor is to receive eighteen percent of the sales of said business, and that lessee guarantees the sales to be not less than $35,000 per annum as a minimum. If this were all the provisions in Item 6 with reference to the amount of rental the question would be entirely free from difficulty. In the same Item 6 and immediately following the minimum of $35,000 as the guaranteed annual sales, it is further provided: "It is understood that any sales made on account of the New Home Sewing Machines are to be considered and taken as a part of the guaranteed annual sales of $35,000."

It will be observed that Item 6 does not make any mention with reference to the eighteen per cent applying to the sale of the New Home Sewing Machines. However, from an examination of the record it is disclosed that the lessor did not deduct anything in the monthly reports on account of the sales of the New Home Sewing Machine. Certainly the provision in Item 6 with reference to the aggregate sales of the New Home Sewing Machine would be considered and taken as a part of the guaranteed annual sales of $35,000 which was inserted in the contract for some purpose. It does not appear from the record that the lessee was interested in the sale of the New Home Sewing Machines, more than that the aggregate sales of these sewing machines was to be taken into consideration in arriving at the minimum of $35,000 annual sales.

The Chancellor in the finding of facts and conclusions reached as set forth in the final decree did not allow the item of the sales of the New Home Sewing Machines to be included in arriving at the minimum of $35,000 aggregate sales. The sewing machines sales amounted to $5,168.73. It is contended for complainant that the guaranteed amount of sales of $35,000 annual minimum, or $70,000 for the two years, should be construed that the defendant contracted to pay to complainant a minimum of $12,600 as rent for the two years, this being eighteen percent of $70,000. This contention was sustained by the decree of the Chancellor. There is no specific provision in the contract between the parties that the minimum annual rental should be $6,300, or $12,600 for the two years period. The provision in the contract is eighteen percent of the aggregate sales with the guarantee that the annual sale will amount to as much as $35,000, or $70,000 for the two years period. It is also provided in the contract that in arriving at the $35,000 minimum per annum, the

amount of New Home Sewing Machines shall be considered. It seems to be mutually understood that the lessor was not to receive commissions on the sale of sewing machines from the defendant.

We are of the opinion that the gross sales of the New Home Sewing Machines, amounting to $5,168.73, should be deducted from the $70,000 and the eighteen percent should be calculated on the $70,000 minimum, less the $5,168.73, making the minimum rent for the two years $11,669.62. The amount collected and retained by complainant and applied on the rental for the two years amounts to $9,398.05, leaving a balance of $2,271.52.

It appears that certain pianos were sold to the First Baptist Church amounting to $1,214.19, and one piano sold to R. K. Gibson, Jr. for $500, and it is contended for appellant that these two items should be included in arriving at the minimum of $35,000. In the view of the case we have taken we think it immaterial whether these items be added or considered in arriving at the $35,000 minimum for piano sales, because if these two items were added it would not bring the piano sales up to the amount of the $35,000 annual minimum. The $35,000 annual minimum was guaranteed by the lessee, and the only other condition with reference to the $35,000 annual minimum was the provision in the contract as above set forth that the sale of New Home Sewing Machines was to be included in arriving at the $35,000 annual minimum.

The defendant filed answer and cross-bill setting up various matters, and among which it is contended that the defendant was deprived of the last four days use of the leased premises resulting in certain damage to the stock of pianos and also in the sales. It is contended for defendant that four days before the lease contract terminated the complainant practically dispossessed the defendant of the leased premises, by beginning certain repairs and putting certain building materials in the space occupied by the pianos, and a sign to the effect that this particular department was closed. We have carefully examined the record and do not find that this contention is supported by the evidence, or that any damage resulted to the lessee. It appears that the stock of pianos remaining were sold on consignment on the date preceding the beginning of the repairs, and that no reductions were made by the lessee to the purchaser of the pianos because of any alleged damage or injury sustained because of the settling of dust or grit.

To so much of the decree as denies the relief sought by the cross bill we concur.

We are of the opinion that the learned Chancellor was in error in arriving at the amount of annual rental and in the construction of the contract to the effect that the minimum rental would be $6,400 per year, or $12,600 for the two years. This would be true were it

not for the provision in the contract that in arriving at the $35,000 annual minimum the amount of New Home Sewing Machines sold during the period would be taken into consideration and would form a part of the $35,000 annual minimum. As above pointed out in this opinion, we think that a proper construction of the contract would mean that by its provisions the complainant was to receive eighteen percent of the gross sales with a guaranteed minimum of $35,000 per annum, or $70,000 for the two years period, and by the further provision that the sewing machines sold would be considered in calculating the $35,000 annual sales, that the amount of sewing machines sold during the period should first be deducted from the minimum and the eighteen per cent calculated on the net balance.

We are further of the opinion that interest should be calculated on the amount of recovery from August 1, 1924, as the balance of the rent account became due on that date, and that the decree of the Chancellor should therefore be modified so as to reduce the recovery from $3,201.95 principal to $2,271.52 principal, with interest thereon from August 1st to this date, and all costs of the cause below.

We are further of the opinion that the costs of this appeal should be divided, three-fourths to the appellant and one-fourth to appellee, and judgment will be entered here in accordance with this opinion against the appellant, and sureties on the appeal bond for the amount of the judgment interest and costs, including that part of the costs of this appeal to be paid by appellant, Lester Piano Company, and judgment against appellee for one-fourth of the costs of this appeal, and for which executions may issue.

Heiskell and Owen, JJ., concur.